**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, a Texas reciprocal inter-insurance exchange, | § § § § | |
| Plaintiff, | § § | **SA12CA0282 FB** |
| V. | § § | CIVIL ACTION NO._____ |
| MITEK SYSTEMS, INC. a Delaware corporation, | § § § | |
| Defendant. | § § | JURY TRIAL DEMANDED |

FILED
2012 MAR 29 P 4: 55

**COMPLAINT**

Plaintiff, United Services Automobile Association ("USAA"), by and through the undersigned counsel, files this Complaint against Defendant, Mitek Systems, Inc. ("Mitek"), and alleges as follows:

**NATURE OF ACTION**

1.    USAA seeks a declaratory judgment that USAA does not infringe any valid claim of United States Patent Nos. 7,778,457 ("the '457 patent"), 7,949,176 ("the '176 patent"), 7,953,268 ("the '268 patent"), 7,978,900 ("the '900 patent"), and 8,000,514 (the '514 patent) (collectively, the "Asserted Patents"), and that Asserted Patents are not enforceable against USAA.  Further, USAA seeks recovery for Mitek's misappropriation of USAA's proprietary information, breach of contract, fraud and fraudulent inducement, and unjust enrichment.  USAA also seeks injunctive relief.

2.    A true and correct copy of the '457 patent is attached hereto as Exhibit A.

3.      A true and correct copy of the '176 patent is attached hereto as Exhibit B.

4.      A true and correct copy of the '268 patent is attached hereto as Exhibit C.

5.      A true and correct copy of the '900 patent is attached hereto as Exhibit D.

6.      A true and correct copy of the '514 patent is attached hereto as Exhibit E.

7.      Mitek identifies these Accused Patents as relating to mobile deposit in the articles attached as Exhibits F and G.

## THE PARTIES

1.      Plaintiff USAA is a reciprocal interinsurance exchange and unincorporated association organized under the laws of the State of Texas having its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288. USAA and its related entities are dedicated to the financial well-being of members of the military and their families through the provision of insurance, banking, investment, and retirement products and services. USAA does business throughout the United States, including in this judicial district, and through its website at www.usaa.com.

2.      Defendant Mitek is a Delaware corporation having its principal place of business at 8911 Balboa Ave, Suite B, San Diego, California 92123. Mitek does business throughout the United States, including in this judicial district.

## JURISDICTION AND VENUE

3.     This action arises under the Patent Laws of the United States, Title 35, United States Code, Section 1 et seq., the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), and is for a declaratory judgment that the Asserted Patents are not infringed and/or not enforceable against Plaintiff. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

4.     In addition, this Court has supplemental jurisdiction over the related state law claims asserted herein pursuant to 28 U.S.C. § 1367.

5.     Venue in this judicial district is proper under Title 28, United States Code, §§ 1391(b) and 1391(c), and/or 1400. Further, the parties have agreed that the exclusive venue for claims by and between USAA and Mitek, arising out of Mitek's work with USAA, is Bexar County, San Antonio, Texas. All or a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in the Western District of Texas.

## BACKGROUND

6.     USAA has been serving present and former members of the U.S. military and their families since 1922 and has become one of America's leading insurance and financial services companies. USAA, well known for its exceptional customer service, offers its members a wide range of insurance, banking and investment products and services designed to help them meet their financial security needs. Headquartered in San Antonio, Texas, with offices in several states and Europe, USAA employs more than 20,000 people to provide for the financial well-being of over 8 million members.

7.    Upon information and belief, Mitek is engaged in the development, sale and service of software related to document imaging and intelligent character recognition.

8.    On March 21, 2012, Mitek sent to USAA an email in which it asserted that USAA is infringing upon Mitek's patents relating to Mobile Deposit, a true and correct copy of which is annexed hereto as Exhibit H.  Specifically, Mitek, through its Vice President of Sales and Business Development, stated:

> It appears that while you are entitled to use our software for processing
> transactions, you don't have a license to use our IP for mobile deposit.  You may
> not be aware that Mitek has been awarded several patents in the space which
> covers Mobile Deposit in the manner which you are currently using it.

Exhibit H.  Mitek, further, asserted that USAA would need to purchase an additional license from Mitek so as to avoid future infringement.  Exhibit H.

9.    The March 21, 2012 email referred to above (Exhibit H) represents the first communication between the parties hereto regarding the Asserted Patents.

10.    The threats concerning the alleged infringement accelerated during the eight following days.  On March 28, 2012, Mitek informed USAA "Also, as you may know already, USAA has not licensed  Mitek's Mobile Deposit intellectual property for your current mobile application which allows consumers to deposit checks via their mobile devices.  We would like to include the intellectual property rights as part of this amendment."  Exhibit I.  On the same day, a different employee of Mitek informed USAA "Our protocol dictates that when a customer is outside the scope of the license, we need to escalate to our CFO and Legal."  Exhibit J.

11.    On March 29, 2012, the Chief Financial Officer of Mitek sent a formal letter stating that USAA has not licensed Mitek's Mobile Deposit intellectual property and demanding that USAA cease all use of Mitek's software.  Exhibit K.

12.    USAA denies infringement of the Asserted Patents and seeks judgment that it does not infringe any of the claims of the Asserted Patents and that the Asserted Patents are unenforceable as against USAA.

13.    By reason of the facts set forth above, a conflict of asserted rights has arisen between the parties and an actual controversy exists between Plaintiff USAA and Defendant Mitek with respect to the infringement, scope and enforceability of the Asserted Patents.

14.    The Asserted Patents are, and each claim of such patent is, on information and belief, not infringed and/or not enforceable against Plaintiff under one or more of the provisions of Title 35, United States Code, Sections 101, 102, 103, and 112.

15.    At least as early as 2005, USAA invented, and began implementation of, a consumer based system and method for remotely depositing financial documents, such as checks ("RDC Invention").  The RDC Invention includes the use of a general purpose and/or mobile (portable) imaging device, such as a digital camera, for capturing the image of the financial document, transmitting the image, and processing the financial document from the captured image (*e.g.,* "reading" or extracting data from the check image). The first of several patent applications directed to the RDC Invention was filed by USAA on December 29, 2005, prior to the formation of a business relationship between USAA and Mitek.

16.     In order to implement the RDC Invention for use by USAA's banking customers, USAA investigated software capable of reading courtesy amount (CAR) and legal amount (LAR) of the checks.  Several software vendors were considered, and USAA ultimately selected Mitek.  Mitek, like other potential vendors, had a software product that had been used in the banking industry for commercial processing of CAR and LAR in a batch system.  However, on information and belief, Mitek had no prior knowledge of any real time system or method that allowed consumers to remotely deposit individual (one-by-one) checks using a general purpose and/or portable imaging device.

17.     Prior to disclosing its RDC Invention to Mitek, USAA required Mitek to execute a Confidentiality Agreement dated May 12, 2006 ("Confidentiality Agreement").  Among other things, the Confidentiality Agreement restricted the use and disclosure by Mitek of USAA's ideas and concepts, such as those related to the RDC Invention.  From the onset of the engagement between USAA and Mitek through today, Mitek has been bound by the terms of the Confidentiality Agreement and other similar agreements (Exhibits L, M and N).

18.     USAA ultimately disclosed its RDC Invention to Mitek, including USAA's interest in using Mitek's preexisting software as a component of USAA's pioneering system and method.  For example, one or more Mitek employees were on-site at USAA headquarters in San Antonio, Texas in 2006, and had access to USAA's ideas, concepts, and software code related to its RDC Invention.  All of those disclosures by USAA to Mitek were subject to the Confidentiality Agreement.  In fact, on March 28, 2008, Mitek and USAA signed a third Confidentiality Agreement which specifically referenced the intent of USAA and Mitek to "discuss or negotiate the potential provision by Mitek of goods or services to USAA in support

of USAA's Deposit@Home program and product and USAA's Scan@Home program and product" and to "share ideas on the development of the technologies to further USAA's business processes related to the Programs." Exhibit N, section 1.1.1. The Confidentiality Agreements between the parties allowed USAA to continue to use its residual knowledge to develop business ideas, services, products and technologies, whether or not such were similar to or the same as Mitek's. Exhibits M and N, section 4.9. No similar provision was entered into allowing Mitek to develop products or technologies similar to or the same as those being developed by USAA.

19.     USAA licensed the use of Mitek's software for development purposes and then, later, in order to use Mitek's software within USAA's remote deposit applications. Mitek's software was used for the limited purpose of reading CAR and LAR on check images transmitted to USAA.

20.     Notwithstanding the preexisting nature of Mitek's software, a substantial amount of work was required to incorporate Mitek's software into USAA's implementation of its RDC Invention.   The vast majority of the work done to incorporate Mitek's software into USAA's system was done by employees of USAA at its headquarters in San Antonio, Texas.

21.     As a result of USAA's invention and implementation efforts, it launched its pioneering consumer remote deposit capture in the fall of 2006 under the trademark Deposit@Home®.   USAA's proprietary Deposit@Home® system and method included the use of consumer scanners by which USAA banking customers could deposit individual checks remotely. The implementation of USAA's RDC Invention has been a revolutionary advance in the U.S. banking industry, and received substantial acclaim.

22.     During 2007, USAA continued to develop its pioneering remote deposit system and method.   One of the issues USAA addressed and resolved was the optimization and enhancement of the captured document image for extraction of data from the image.   Correcting the geometry and orientation of the captured imaging, including dewarping and deskewing, was particularly important as USAA began implementation of the RDC Invention in connection with digital cameras, such as those associated with smartphones.

23.     In 2007, while still working with Mitek, USAA actually made, at its headquarters in San Antonio, Texas, a system for using a portable device (digital camera) for capturing a check image, and thereafter processing the check from the captured image.   Furthermore, processing of the check by USAA included the geometry and orientation of the captured image and extraction of data therefrom.   Mitek was on-site at USAA's headquarters during this time, and USAA's work in this area was disclosed to Mitek and subject to the Confidentiality Agreements entered into between the parties.

24.     From 2005 through 2007, USAA invested millions of dollars and thousands of man-hours in the development and implementation of its RDC Invention.   Furthermore, from December 2005 through 2007, USAA filed numerous patent applications directed to its RDC Invention, including applications addressing the geometry and orientation issues related to the use of mobile or portable devices (*e.g.,* smartphones) for imaging checks.

25.     On January 18, 2008, well after USAA's disclosures to Mitek and without the knowledge or authorization of USAA, Mitek filed a provisional patent application with the U.S. Patent and Trademark Office (PTO), Serial No. 61/022,279 (Exhibit O, the "Mitek Application").   The Mitek Application names Grigori Nepomniachtchi of Mitek as the sole

inventor. Furthermore, the Abstract and Claim 1 of the Mitek Application recite "a method for document image capture on a mobile communication device comprising capturing an image of the document using the mobile communication device, submitting the image to a server, and processing the image to create a bi-tonal image of the document for data extraction."

26.     Upon information and belief, all of the Asserted Patents are based upon and claim priority to the Mitek Application, and were first published (without authorization of USAA) on July 23, 2009. Furthermore, but for Mitek's improper use and disclosure of USAA confidential information, including information related to the RDC Invention, Mitek would not have had the information necessary to file the Mitek Application.

27.     To the surprise of USAA, and without authorization of USAA, Mitek publicly announced its launch of a "mobile capture" solution in its Form 10-K for the year ended September 30, 2008 (Exhibit P). That document states, in pertinent part, that "[Mitek] created Mobile Capture...that recognizes and reads...document features using a scanner attached to a personal computer." It goes on to state that Mitek "recently developed our first mobile product...that allows banks to accept paper check deposits...via camera-equipped mobile phones."

28.     In 2010, over 2 years after the filing of the Mitek Application, Mitek filed a request with the PTO for "accelerated" examination, which was ultimately accompanied by an Amended Accelerated Examination Pre-Examination Support Document ("AAE").

Mitek's AAE included a "Concise Statement of Utility" that read as follows:

The invention as claimed has utility in that it allows for image capture of financial documents using a portable devices [sic] and for processing of the financial document from the captured image. The invention as claimed provides for optimization and enhancement of the captured document image for extraction of document data from the image. The optimization and enhancements include geometrically correcting the document image, binarizing the image, and correcting the orientation and/or the size of the image for improved data extraction. (AAE, March 3, 2010).

Based on the facts recited above, this admission by Mitek confirms that Mitek's purported "invention" was derived from USAA, and that the invention was actually made by USAA in the United States prior to Mitek.

29.     Mitek derived the methods and systems disclosed and claimed in the Asserted Patents from the confidential information supplied to it by USAA, which was also the basis for one or more patent applications filed by USAA.

30.     Absent disclosure by the applicant, the examiner had no way of learning of the existence of the USAA confidential information, let alone that the named inventors had used the USAA confidential information as the starting point for and the basis of the inventions claimed in the Asserted Patents.

31.     Although USAA and Mitek have had a business relationship since the 2006 timeframe, in recent times the relationship has become adverse.

32.     For example, in February 2012, Mitek began taking the position that USAA owed an exorbitant sum of monies based on Mitek's belief that USAA had exceeded the license granted in the 2007 Amendment, to a Software License Agreement entered into between Mitek and USAA. In March 2012, Mitek began sending USAA contentious emails concerning the

Agreement and the Amendment thereto, going so far as to accuse USAA of infringing upon Mitek's intellectual property and demanding USAA pay additional monies to Mitek to obtain new licenses to continue use of its software.

33.    On March 26, 2012, Mitek's Vice President of Sales, Louise Steller, emailed USAA's representative expressing frustration with USAA concerning a volume report and demanding a ██████████████████████ ██████ misconstruing the 2007 Amendment The relevant email chain is attached at Exhibit Q hereto.

34.    USAA provided the demanded report.   Mitek's representative Ms. Steller responded that ██████ ███████ ██ ██ ██████████ ██████ █████.   The best way for both parties to move forward is to not get into a discussion over transaction count methodology but to focus our efforts on agreeing to new license terms for future needs." Exhibit R.   Upon information and belief, Ms. Steller's response was intended to convey that Mitek was not interested in the proper interpretation of the Amendment, but was only willing to discuss all new licensing terms.

35.    USAA responded to Ms. Steller that only Items successfully processed should be counted:   "[USAA] should subtract the items that were not successful—CAR/customer account mismatch, incomplete MICR and false positive endorsement." Exhibit S.

36.    Even though the 2007 Amendment provides that only Items "successfully processed through USAA's system" should be counted, Ms. Steller of Mitek responded by accusing USAA of "questionable" tactics and trying to avoid payment of licensing fees: "These newly introduced definitions do not make any sense to us as it relates to our products or

**REDACTED**

established industry practices. This last minute change in order to avoid paying for overage and buying a new license is questionable." Exhibit T.

37.    On March 26, 2012, Mitek communicated to USAA that rather than reaching an understanding of the proper interpretation of the Amendment, Mitek demanded new licensing terms requiring payment from USAA ██ ████ ██ ████████ ████████ Mitek made this demand even though the Amendment provides that ██ ██████████████ ██████ ██ █████████████████ successfully processed, the total, and final, █████████ ██████ ██ ██ ████████. USAA has never exceeded the need for Tier 3.

38.    The formal letter that the Chief Financial Officer sent on March 29, 2012 (Exhibit K) stated that the ██████████████ ███████ and requested that USAA stop using the Mitek products licensed under the Agreement.

39.    The foregoing, and in further view of the accusations of patent infringement described herein, led USAA to reasonably believe that the parties' relationship had become adverse.

## COUNT I

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE ASSERTED PATENTS

40.    The above allegations are incorporated by reference as if fully set forth herein.

41.    USAA's use of the Mitek software, pursuant to a licensing agreement, does not infringe upon any valid claim of the Asserted Patents.

## REDACTED

42.     Further, any claim of infringement against USAA under the Asserted Patents is barred by the doctrine of implied license.

43.     USAA's mobile and remote deposit services do not infringe the Asserted Patents.

## COUNT II

## DECLARATORY JUDGMENT THAT ASSERTED PATENTS ARE UNENFORCEABLE AGAINST USAA

44.     The above allegations are incorporated by reference as if fully set forth herein.

45.     The asserted patents are unenforceable based on the doctrines of laches, waiver, estoppel and exhaustion.

## COUNT III

## MISAPPROPRIATION OF TRADE SECRETS

46.     The above allegations are incorporated by reference as if fully set forth herein.

47.     USAA has adopted reasonable measures to maintain the secrecy of the RDC information at issue, such as the Confidentiality Agreements.

48.     USAA's confidential and proprietary information derived independent economic value from not being generally known to the public or to other persons who could obtain economic value from its disclosure or use.  USAA has invested substantial amounts of money and resources in the development of safeguards.  USAA's confidential and proprietary information derived independent economic value from not being generally known to the public or to other

persons who could obtain economic value from its disclosure or use, and is of great commercial importance to USAA.

49. The proprietary algorithms, concepts, discoveries, ideas, software, and development plans related to RDC are valuable proprietary property and trade secrets of USAA.

50. Defendant agreed to keep USAA's trade secrets and other confidential information protected and confidential during the respective terms of the confidentiality agreements. The confidentiality agreements cover confidential information including, but not limited to, "discoveries, ideas, concepts, software in various stages of development, …development plans and procedures," among other things.

51. Defendant knew or should have known when they incorporated USAA's proprietary discoveries, ideas, concepts, and development plans and procedures into their software and patent applications, that such use was unauthorized use of proprietary USAA information.

52. Defendant knew or should have known that they were misusing confidential, proprietary information belonging to USAA and/or that their activities were improper because Defendant's products were designed specifically to enable users to perform activities identical to those disclosed to Defendants by USAA under an obligation of confidentiality.

53. Defendant's use of the proprietary information disclosed under the terms of a confidentiality agreement, with full knowledge of its unlawful purpose, constitutes the willful misappropriation of the USAA trade secrets at issue.

54.     Defendant's misappropriation of the USAA trade secrets was carried out in a willful, wanton and reckless manner in disregard of the rights of USAA.

55.     As the direct and proximate result of Mitek's misappropriation, USAA suffered actual loss for which it seeks recovery and seeks recovery of the unjust enrichment caused by the misappropriation. Because its remedy at law is inadequate, USAA seeks injunctive relief to enjoin Mitek's misappropriation.

56.     USAA will suffer irreparable injury unless Mitek is enjoined from misappropriating the USAA trade secrets.

## COUNT IV

### BREACH OF CONTRACT

57.     The above allegations are incorporated by reference as if fully set forth herein.

58.     USAA and Mitek entered into the Confidentiality Agreements.

59.     The USAA Confidentiality Agreements are valid and enforceable contracts. The confidentiality covenants and other provisions contained in the agreements are reasonably necessary to safeguard legitimate protectable interests in trade secrets, confidential information, customer relationships, workforce, and goodwill.

60.     USAA has fully performed its obligations under these agreements.

61.     Mitek breached, is breaching, or threatens breach by, among other things:

- specifically designing products and/or services to enable users to perform activities identical to those disclosed to Mitek by USAA under an obligation of confidentiality;

- failing to keep USAA's trade secrets and other confidential information protected and confidential during the respective terms of the confidentiality agreements;

- incorporating USAA's proprietary discoveries, ideas, concepts, and development plans and procedures into their product and service offerings, software, and patent applications that they knew to be the same as or similar to those being developed by USAA; and

- filed patent applications and patents without listing USAA as an assignee or inventor and without disclosing same to USAA

62.   As the direct and proximate result of Mitek's breach, USAA suffered actual loss for which it seeks recovery.  Because its remedy at law is inadequate, USAA seeks injunctive relief to enjoin Mitek's continued breach.

## COUNT V

## FRAUD AND FRAUDULENT INDUCEMENT

63.   The above allegations are incorporated by reference as if fully set forth herein.

64.   Mitek made a material representation to USAA in the Confidentiality Agreement by agreeing not to use or disclose confidential information of USAA, which included USAA's RDC Invention and other programs that were in development at the time which would allow consumers to remotely deposit checks using their mobile imaging devices.

65.     Mitek's representation was false in that Mitek used and misappropriated USAA RDC Invention and concepts to its own benefit, and disclosed USAA's RDC Invention and associated concepts.  In fact, Mitek evidenced its intent to use the Confidential Information it derived from its work with USAA two months prior to signing the last Confidentiality Agreement by filing its first Provisional Patent Application with the PTO in January 2008, unbeknownst to USAA.

66.     On information and belief, at the time Mitek made its false representations to USAA, Mitek had no intention of fulfilling the terms of the Confidentiality Agreement. Mitek knew the representations were false or made them recklessly and as a positive assertion.

67.     Mitek made the false representations to USAA with the intent that USAA should act upon them; namely, with the intent that USAA disclose its confidential information to Mitek and agree to license Mitek's software.

68.     USAA acted in reliance on Mitek's misrepresentations by disclosing to Mitek its highly confidential information relating to its RDC Invention.

69.     At a result of Mitek's misrepresentations and USAA's reliance thereon, USAA has suffered injury, including without limitation its difficulty in marketing and otherwise profiting from its revolutionary and pioneering RDC Invention.

70.     Mitek intentionally and knowingly misrepresented that USAA would retain its own intellectual property and confidential information. In addition, Mitek intentionally and knowingly failed to disclose that it was misappropriating USAA's intellectual property and confidential information, and filing patents and patent applications incorporating same.

71.     USAA justifiably relied on the misrepresentations and/or the undisclosed information by, among other things, entering into and performing under the Confidentiality

Agreements and by ultimately licensing Mitek's CAR and LAR software application. . Furthermore, because of Mitek's false representations and its actions intended to conceal its conduct from both USAA and the PTO,, USAA did not immediately become aware of their wrongful acts with respect to Mitek's intellectual property.

72.     As a result of Mitek's fraud, USAA has suffered damages for which it seeks recovery.

## COUNT VI

## UNJUST ENRICHMENT

73.     The above allegations are incorporated by reference as if fully set forth herein.

74.     USAA is and was the owner of valuable enabling technology as well as various related patents.

75.     Mitek misappropriated USAA's technology by applying for and obtaining patents based on that technology and confidential information. To the extent such technology and confidential information do not constitute trade secrets, USAA seeks recovery under the common-law claim of unjust enrichment.

76.     Upon information and belief, Mitek has provided third parties with licenses to technology, software, and/or patents based on USAA's technology and confidential information, and Mitek has utilized USAA's technology and confidential information in products that it has designed or sold.

77.     The improper use and incorporation of USAA's technology and confidential information has caused USAA to suffer an impoverishment, and Mitek's use of USAA's technology and confidential information has caused it to be unjustly enriched.  Mitek has no justification for the unjust enrichment, and no reason exists to allow them to retain the benefit without payment to USAA.

78.     Accordingly, USAA has suffered damages for which it seeks recovery.

## COUNT VII
### REIMBURSEMENT

79.     The above allegations are incorporated by reference as if fully set forth herein.

80.     On June 27, 2006 USAA and Mitek entered into an agreement entitled "Software License Agreement" (the "Agreement", Exhibit U hereto).  Among other things, the Agreement granted USAA a "world-wide, royalty-free, non-exclusive, non-sublicensable, non-transferable right to use" certain software provided by Mitek.

81.     On July 27, 2006, the parties agreed to amend certain terms of the Agreement.

82.     On February 21, 2007, the parties executed "Amendment #2 to Software License Agreement" (the "Amendment", Exhibit V hereto).  Among other things, the 2007 Amendment "[e]stablishes a perpetual software license and maintenance agreement."

83.     Exhibit A to the 2007 Amendment sets out "Processing Tiers" and associated "Incremental Fees."  The Processing Tiers are based on the number of "Items" "successfully processed through USAA's application."  Exhibit A to the 2007 Amendment provides that the

number of Items successfully processed is determined using a 12 month moving average, reported by USAA to Mitek every 6 months.

84. 

85. USAA's 12 month moving average of Items successfully processed through USAA's system has never exceeded Tier 3.

86. Notwithstanding the above, Mitek has invoiced USAA for licensing fees as if the license granted was a subscription instead of a perpetual license, with Tier payments being invoiced every 12 months. Mitek has invoiced USAA in this manner for USAA's Deposit@Home, Deposit@Mobile, and USAA EZ Deposit services. Upon information and belief, Mitek was aware that it was invoicing and receiving licensing fees for each of these USAA services.

87. As a result of the conduct described in Paragraph 85 hereof, ▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. USAA has paid these amounts

**REDACTED**

and Mitek has accepted these overpayments, USAA has never owed these amounts, and USAA seeks a reimbursement in its entirety.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff USAA demands judgment as follows:

A.   The Asserted Patents are not infringed by USAA;

B.   The Asserted Patents are invalid;

C.   The Asserted Patents are unenforceable against USAA;

D.   Award USAA an ownership interest in the Asserted Patents;

E.   Enter judgment against Mitek for actual, consequential, and compensatory damages suffered by USAA;

F.   Enter judgment against Mitek for exemplary damages;

G.   Enter preliminary and permanent injunctive relief preventing Mitek from using USAA's confidential and proprietary information, technology, patents, and patent applications;

H.   Award USAA attorneys' fees and costs;

I.   Award USAA pre-judgment and post-judgment interest at the highest rates allowed by law;

J.   Award USAA an accounting of past and future damages; and

K.   Grant USAA such other and further relief as the Court deems just and proper.

## JURY DEMAND

USAA respectfully requests a trial by jury as to all issues so triable.

DATED:  March 29, 2012

Respectfully Submitted,

AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
300 Convent Street, Suite 1600
San Antonio, Texas 78205
Tel. 210.281.7000
Fax 210.224.2035


R. LAURENCE MACON
Texas Bar No. 12787500

ATTORNEYS FOR PLAINTIFF, UNITED
SERVICES AUTOMOBILE ASSOCIATION